## TUNSTALL v. BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN et al.

### No. 5125.

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1944.

Charles H. Houston and Joseph C. Waddy, both of Washington, D. C. (Oliver W. Hill, of Roanoke, Va., on the brief), for appellant.

William G. Maupin and James G. Martin, both of Norfolk, Va. (Harold C. Heiss and Russell B. Day, both of Cleveland, Ohio, on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PER CURIAM.

This is an appeal from an order dismissing a suit for lack of jurisdiction. Plaintiff is a Negro fireman employed by the Norfolk-Southern Railway Company and he brings the suit in behalf of himself and other Negro firemen employed by that company. The defendants are the railway company, the Brotherhood of Locomotive Firemen and Enginemen, certain subordinate lodges of that labor·union and one of its officers. The gravamen of the complaint is that the union has been selected as bargaining agent of the firemen of the defendant railway company; that it excludes Negro firemen from membership; that it has negotiated a trade agreement with the company discriminating against Negro firemen; and that as a result of this agreement plaintiff has suffered discrimination with respect to seniority rights and has been damaged thereby. The relief asked is a declaratory judgment to the effect that the union as bargaining representative is bound to represent fairly and without discrimination all members of the craft, an injunction restraining the defendants from giving effect to the trade agreement in so far as it discriminates against Negro firemen and restraining the union from acting as bargaining representative of Negro firemen so long as it refuses to represent them fairly and impartially, an award against the union for damages sustained by plaintiff, and an order that plaintiff be restored to the position to which he would be entitled by seniority in absence of the contract.

There is no allegation of diversity of citizenship and jurisdiction of the suit can be maintained only on the ground that the controversy is one arising under the laws of the United States. In so far as the suit is grounded on wrongful acts of the defendants, it cannot be said to be one arising under the laws of the United States, even though the union was chosen as bargaining representative pursuant to such laws. Barnhart v. Western Maryland Ry. Co., 4 Cir., 128 F.2d 709: Teague v. Brotherhood of Locomotive Firemen and Enginemen, 6 Cir., 127 F.2d 53. We have considered whether jurisdiction might not be sustained for the purpose of declaring the rights of plaintiff to the fair representation for the purposes of collective bargaining which is implicit in the provisions of the National Railway Labor Act, 45 U.S.C.A. § 151 et seq. We think, however, that recent decisions of the Supreme Court hold conclusively that there is no jurisdiction in the federal courts to afford relief under the act except where express provisions of the act so indicate. Brotherhood of Ry. & S. S. Clerks, etc., v. United Transport Service Employees of America, 64 S.Ct. 260, decided Dec. 6, 1943; Switchmen's Union of North America, etc. v. National Mediation Board et al., 64 S.Ct. 95, decided Nov. 22, 1943; General Committee, etc., v. Southern Pac. Co., 64 S. Ct. 142, decided Nov. 22, 1943; General Committee, etc., v. Missouri-Kansas-Texas Railroad Co. et al., 64 S.Ct. 146, 150, decided Nov. 22, 1943. In the case last cited, the Supreme Court, after commenting upon various provisions of the act and the machinery provided for their enforcement, said:

"The new administrative machinery plus the statutory commands and prohibitions marked a great advance in supplementing negotiation and self-help with specific legal sanctions in enforcement of the Congressional policy.

"But it is apparent on the face of the Act that while Congress dealt with this subject comprehensively, it left the solution of only some of those problems to the courts or to administrative agencies. It entrusted large segments of this field to the voluntary processes of conciliation, mediation, and arbitration. Thus by § 5, First, Congress provided that either party to a dispute might invoke the services of the Mediation Board in a 'dispute concerning changes in rates of pay, rules, or working conditions not adjusted by the parties in conference' and any other 'dispute not referable' to the Adjustment Board and 'not adjusted in conference between the parties or where conferences are refused.' Beyond the mediation machinery furnished by the Board lies arbitration. § 5, First and Third, § 7. In case both fail there is the Emergency Board which may be established by the President under § 10. In short, Congress by this legislation has freely employed the

traditional instruments of mediation, conciliation and arbitration. Those instruments, in addition to the available economic weapons, remain unchanged in large areas of this railway labor field. On only certain phases of this controversial subject has Congress utilized administrative or judicial machinery and invoked the compulsions of the law. Congress was dealing with a subject highly charged with emotion. Its approach has not only been slow; it has been piecemeal. Congress has been highly selective in its use of legal machinery. The delicacy of these problems has made it hesitant to go too fast or too far. *The inference is strong that Congress intended to go no further in its use of the processes of adjudication and litigation than the express provisions of the Act indicate.*" (Italics supplied.)

Closely analogous to the case at bar is the case of General Committee, etc., v. Southern Pac. Co., supra. That was a suit for declaratory judgment that provisions of an agreement between a carrier and a committee representing firemen concerning the demotion of engineers to firemen and the calling of firemen for service as emergency engineers were invalid under the Railway Labor Act. Complainants there based their right to relief upon the same provisions of the act guaranteeing employees the right to bargain collectively through representatives of their own choosing as are relied on here; but the court held that the questions presented were not justiciable issues under the Act. The court said [64 S.Ct. 145]: "We are concerned only with a problem of representation of employees before the carriers on certain types of grievances which, though affecting individuals, present a dispute like the one at issue in the Missouri-Kansas-Texas R. Co. case. It involves, that is to say, a jurisdictional controversy between two unions. It raises the question whether one collective bargaining agent or the other is the proper representative for the presentation of certain claims to the employer. It involves a determination of the point where the exclusive jurisdiction of one craft ends and where the authority of another craft begins. For the reasons stated in our opinions in the Missouri-Kansas-Texas R. Co. case and in the Switchmen's case, we believe that Congress left the so-called jurisdictional controversies between unions to agencies or tribunals other than the courts. We see no reason for differentiating this jurisdictional dispute from the others."

█ If the courts are without power under the provisions of the act relied on to declare a contract void because the association which negotiated it was not authorized to represent complainants, they are equally without power to make such declaration where the complaint is that it has not represented them fairly. If the courts may not under the act declare where the exclusive jurisdiction of one craft ends and the authority of another begins with respect to the right of collective bargaining, a fortiori they are without power to declare the duties of a bargaining agent within the limits of his undoubted jurisdiction. It would be absurd to hold that the courts have power to declare a contract void because the bargaining agent has not properly and impartially represented different groups of employees, but are without power where he is not authorized to represent them at all. If the courts may not make a determination between conflicting rights of organized groups, it is difficult to see how their power should be extended by the mere fact that one of the groups is unorganized.

The court here is asked, in enforcement of the provision of the act that employees shall have the right to bargain collectively through representatives of their own choosing, to declare the duty of a representative admittedly chosen by a majority of the craft, and to interfere by injunction with the process of bargaining undertaken pursuant to the act on the ground that the purposes of the act are being violated. This, as we interpret the foregoing decisions of the Supreme Court, we have no power to do.

The decree dismissing the suit will be affirmed.

Affirmed.