**TUNSTALL v. BROTHERHOOD OF LOCO-MOTIVE FIREMEN AND ENGINE-MEN, NORFOLK, VA., et al.**

Civil Action No. 210.

District Court, E. D. Virginia, Norfolk Division.

Oct. 9, 1946.

Oliver W. Hill and Spottswood W. Robinson, III, both of Richmond, Va., and Charles H. Houston and Joseph C. Waddy, both of Washington, D. C., for plaintiff.

William G. Maupin, of Norfolk, Va., Harold C. Heiss and Russell B. Day, both of Cleveland, Ohio, and Ralph M. Hoyt, of Milwaukee, Wis., for Brotherhood of Locomotive Firemen and Enginemen, Ocean Lodge, No. 76, Norfolk, Va., Port Norfolk Lodge, No. 775, Portsmouth, Va., and W. M. Munden, defendants.

James G. Martin of Norfolk, Va., for Norfolk Southern Ry. Co.

HUTCHESON, District Judge.

The facts involved in this case have been stated by the United States Circuit Court of Appeals, Fourth Circuit, in 140 F.2d 35, and in 148 F.2d 403. The case was before the Supreme Court and by it reported in 323 U.S. 210, 65 S.Ct. 235, 236, 89 L.Ed. 187, where the Court refers to it as "setting up, in all material respects, a cause of action like that alleged in the Steele case." The Steele case referred to was before the Supreme Court under the style of Steele v. Louisville & N. R. Co., et al, and reported at 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. In the last mentioned opinion the Supreme Court recites the material allegations of the bill of complaint.

It is not deemed necessary to discuss in detail the allegations of the respective pleadings except in so far as they may be pertinent to the decision of the question now before this Court.

When the case first came before this Court it was dismissed on the ground that the Court did not have jurisdiction. That action of the District Court was affirmed by the Circuit Court of Appeals, Fourth Circuit, for the reasons set forth in its opinion appearing in 4 Cir., 140 F.2d 35.

The case was then considered by the Supreme Court along with the Steele case and for reasons set forth in its opinion, supra, it was held that jurisdiction is conferred upon the Federal Courts by Judicial Code, Section 24(8), 28 U.S.C.A. § 41(8). In the concluding paragraph of that opinion the Court stated:

"We hold, as in the Steele case, that the bill of complaint states a cause of action entitling plaintiff to relief. As other jurisdictional questions were raised in the courts below which have not been considered by the Court of Appeals, the case will be re-

manded to that court for further proceedings."

In its opinion appearing in 148 F.2d 403, 407, the Circuit Court of Appeals considered the jurisdictional questions arising out of service of process, and in announcing its conclusion used the following language:

"For the reasons stated, we think that there was sufficient service of process to bring the defendants before the court and that the court had jurisdiction of the causes of action alleged."

█ Subsequent to the issuance of the mandate of the Circuit Court of Appeals the plaintiff filed a motion for summary judgment under Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c. Similar motions for summary judgments were filed by the various defendants and the case is now before this Court upon those motions. After the motions for summary judgments had been filed, plaintiff filed a motion to strike from the evidence certain affidavits presented by the defendants upon the ground that they were irrelevant. While entertaining doubt as to the relevancy of the last mentioned affidavits, the Court has considered them in reaching the conclusion now to be stated. The test to be applied is whether the pleadings, depositions and admissions on file, together with the affidavits, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The admitted facts presented by the pleadings, depositions, admissions and affidavits, show the following:

That plaintiff is a negro locomotive fireman, employed by the defendant Norfolk Southern Railway Company and its predecessor Norfolk Southern Railroad Company (both hereinafter called the Railway) on or prior to March 28, 1940, and from then to the present; that by constitutional provision and practice of the Brotherhood of Locomotive Firemen and Enginemen (hereinafter called the Brotherhood) plaintiff is ineligible for membership in the Brotherhood because he is a negro; that at all times from the beginning of the present case the defendant Ocean Lodge No. 76 and the Port Norfolk Lodge No. 775 are the only Brotherhood lodges within the territorial limits of the Norfolk Division of this Court, and that the membership of Ocean Lodge No. 76 has been and is now composed in major part from among the white firemen, engineers, hostlers and hostler helpers employed on the defendant Railway; that the defendant W. M. Munden is local chairman of Ocean Lodge No. 76 and has less seniority in the service of the Railway than has the plaintiff; on or about March 28, 1940, the Brotherhood initiated negotiations with the defendant Railway and other carriers, as a result of which there was executed a collective bargaining agreement dated February 18, 1941, referred to as Exhibit II, and a supplementary agreement dated May 23, 1941, referred to as Exhibit III. At the time and ever since the inception of the negotiations with the Railway resulting in the collective bargaining agreement here discussed, the Brotherhood has claimed to be the exclusive bargaining representative under the Railway Labor Act, of the entire craft or class of locomotive firemen employed on defendant Railway, and during the negotiations and execution of the collective bargaining contracts the Brotherhood has purported to act as such exclusive bargaining representative. During the entire time under consideration the Brotherhood has maintained that the employment rights of the plaintiff and the class represented by him are governed by the said collective bargaining contracts. The Brotherhood initiated the negotiations mentioned without having received from the Railway any requests to modify then existing collective bargaining contracts governing rate of pay, rules and working conditions of locomotive firemen employed by it in any manner similar to the proposed modifications. Prior to the initiation of the proceedings the Brotherhood did not notify the plaintiff or any other member of his class that it had the proposed changes under consideration nor did it at any time notify the plaintiff or any other members of his class that notice of the proposed changes had been served upon the Railway or that it was conducting such negotiations. The Railway and the other carriers pro-

tested against the modifications proposed by the Brotherhood and the Brotherhood thereupon invoked the services of the National Mediation Board without giving notice of such action to the plaintiff or any other member of his class, nor were they given notice by the Brotherhood of any of the meetings or conferences preceding the negotiation of the contracts. After the execution of the contracts the Brotherhood did not notify the plaintiff or any member of his class that such agreements had been executed.

Without prolonging this discussion by a recital of the various provisions of the agreement and supplementary agreement, suffice it to say that for the purposes of this case those agreements divide the firemen into two classes, designated as promotable firemen and nonpromotable firemen. The former class refers to white firemen except such as are not qualified to become engineers, and the term nonpromotable firemen refers to negro firemen as a class irrespective of individual qualifications. The agreements provide, in part, that on each railroad the proportion of nonpromotable firemen shall not exceed 50%; until such percentage is reached only promotable men will be hired, and all new runs and all vacancies shall be filled by promotable men; that no nonpromotable men shall be employed on any seniority district on which nonpromotable men were then not employed; promotable firemen are those in line for promotion to the position of locomotive engineer, and on any road having in the opinion of the Brotherhood rules or conditions more stringently limiting the employment of nonpromotable firemen, such rules and conditions may at the option of the Brotherhood be retained.

The plaintiff on or about June 30, 1941, was assigned as locomotive fireman on a passenger run on the northern seniority district of the defendant Railway from Norfolk, Virginia, to Marsden, North Carolina, as a result of a vacancy there, coupled with his seniority. On or about October 10, 1941, at the request of defendant Munden, the defendant Railway took away the passenger run from plaintiff under the provisions of the agreement and supplementary agreement. When the plaintiff was so displaced, the defendant Munden was assigned to the passenger run. After having been displaced on the run, the plaintiff requested the Brotherhood to represent him as a member of the craft or class of locomotive firemen represented by the Brotherhood, for restoration of his job, but this request was refused by the Brotherhood.

The pleadings contain no allegations of inefficiency of the plaintiff nor of the class represented by him, nor is there any charge of misconduct on his part nor on the part of such class. Upon the contrary, the Railway has admitted that the work of the plaintiff had been satisfactory. Furthermore, it appears from copy of a letter of January 15, 1941, from the Chairman, Southeastern Carriers' Conference Committee to the President of the Brotherhood, filed as an exhibit, that the class represented by the plaintiff had rendered faithful and valuable services for many years, and it is there pointed out that the proposed modifications would violate established seniority rights.

In the foregoing outline of facts, the Court has confined itself to stating those considered pertinent which are admitted.

The contention of the defendants may be summarized by stating it to be that by reason of the rules or practices established by the railroads, including the defendant Railway, all colored firemen are ineligible to become engineers, as are some white firemen who lack necessary qualifications. As a result, under the seniority rules in existence, negro firemen occupy in a large measure the more desirable runs, and prospective engineers among the promotable firemen are precluded from acquiring experience on such runs which would be of value to them as engineers upon their promotion, and consequently the efficiency of the engineers would be promoted by the new arrangement. The Brotherhood defendant denies responsibility for creating this condition and disclaims any power to change it. It is insisted in behalf of the defendants, that in negotiating the contracts the Brotherhood was acting "without hostile discrimination, fairly, impartially and in good faith," and the defendants point to the

language of the Supreme Court in the Steele case [323 U.S. 203, 65 S.Ct. 232], where it is said:

"This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interests or merit."

▆ The Court recognizes that a motion for summary judgment should be scrutinized carefully in order that no litigant may be deprived of the opportunity to present proof in a proper case and it is with that principle in mind that the contentions of the respective parties are considered.

The Brotherhood is the statutory bargaining representative of the plaintiff. The plaintiff has no right to bargain individually in his own behalf. Consequently, he is left without any opportunity to protect his interest in pursuing his occupation except to rely upon the proper discharge of its duty by the Brotherhood to represent him fairly and without discrimination. The admitted facts reveal that the Brotherhood (the bargaining representative of the plaintiff), although charged with the duty of protecting the interest of the plaintiff, in disregard of that obligation, initiated of its own accord and without even informing the plaintiff of its intention, negotiations to change existing conditions of employment, under which existing conditions the plaintiff was entitled to valuable seniority rights, including the right of employment on the run from Norfolk to Marsden here involved. As the direct result of the insistence of the bargaining representative the agreements here involved were executed. The railroads concerned protested against discrimination of which complaint is made and as a result of the insistence of the bargaining representative the matter was referred to the National Mediation Board. During all this time the plaintiff was ignored so far as notice and information were concerned. The agreements, as finally executed, disclose that his rights were also ignored, or perhaps more properly stated, he was deprived of his rights. All this was at the instance and insistence of the bargaining representative, charged with the responsibility of representing him without discrimination. It is urged that the fact this block of firemen at the top of the seniority list (holding more desirable assignments) are nonpromotable is because it is contrary to the established practice of the defendant Railway to employ colored men as locomotive engineers. The Brotherhood contends it had no part in creating this practice and then proceeds to act upon the assumption that it has no power to change it. The Court can not conclude that the bargaining representative has properly discharged its duty to the plaintiff and his class by acting upon such an assumption. It is significant that nothing in the record indicates that the Brotherhood has suggested to the railroads an arrangement by which colored firemen may be promoted to the position of engineer. No party to the proceeding has contended that such firemen by reason of their race would not make acceptable locomotive engineers, and there is no proof in the record which would justify such a conclusion. It would appear that the situation is one described by the Supreme Court in the Steele case, appearing after the language in its opinion last quoted:

"Here the discriminations based on race alone are obviously irrelevant and invidious. Congress plainly did not undertake to authorize the bargaining representative to make such discriminations."

It is further urged that the agreement will improve the efficiency, economy and safety of train operation, but the record fails to reflect any prior existing lack of efficiency, economy or safety of train operation justifying such action on the part of the Brotherhood. It may not be inappropriate in this connection to again point to the fact that the agreements were executed at the insistence of the Brotherhood over the protest of the railroads and the rail-

roads, in the final analysis, are the parties answerable for lack of efficiency, economy and safety of train operation.

An examination of the record leaves no doubt that an underlying purpose of the Brotherhood was to affect an arrangement by which promotable men, all of whom are white and either members of or eligible to membership in the Brotherhood, might obtain advantages over nonpromotable firemen, which last designation, by the very terms of the supplementary agreement, "refers only to colored firemen," who are ineligible for such membership. The practical result could hardly be illustrated more forcefully than by the admitted facts of this case. A desirable job assignment has been taken from a competent employee because he is nonpromotable (colored), and given to an employee who, so far as the record discloses is also competent but junior in seniority, because he is promotable (white). What has been said concerning the position of the Brotherhood applies with equal force to the defendant Munden, the chairman of a local lodge of that organization, and the defendant who has personally received the benefits of the resulting conditions.

Relief should be granted against the defendant Railway also for the reasons stated in the Steele case, supra, where it is said:

"The representative which thus discriminates may be enjoined from so doing, and its members may be enjoined from taking the benefit of such discriminatory action. No more is the Railroad bound by or entitled to take the benefit of a contract which the bargaining representative is prohibited by the statute from making."

For the reasons stated, the Court is of opinion that the record clearly demonstrates that there is no genuine issue as to any material fact and considered in the light of the opinions in the cases of Steele v. Louisville & N. R. Co., supra, and Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, the motion of the plaintiff for summary judgment should be granted and the motions of the defendants for summary judgments should be denied.

An order will be entered granting a declaratory judgment in accordance with the first and second paragraphs of the prayer of the complaint; injunctions will be entered in accordance with the third and fourth paragraphs of said prayer; and the order will further direct that the plaintiff have restored to him his right to hold the assignment on the passenger run between Norfolk, Virginia and Marsden, North Carolina.

The case will be continued generally for further hearing upon the question of damages.