## BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN et al. v. TUNSTALL.

### No. 5609.

Circuit Court of Appeals, Fourth Circuit.

Aug. 20, 1947.

Writ of Certiorari Denied Dec. 15, 1947.

See 68 S.Ct. 262.

---

[3] A longshoreman on a ship employed by an independent contractor.

Ralph M. Hoyt, of Milwaukee, Wis., and William G. Maupin, of Norfolk, Va. (Harold C. Heiss and Russell B. Day, both of Cleveland, Ohio, and Jas. G. Martin, of Norfolk, Va., on the brief), for appellants.

Charles H. Houston, of Washington, D. C. (Joseph C. Waddy, of Washington, D. C., and Oliver W. Hill, of Richmond, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from the final judgment and decree in a suit by a Negro locomotive fireman employed by the Norfolk Southern Railway Company against that company and the Brotherhood of Locomotive Firemen & Enginemen to obtain a declaratory judgment, injunctive relief and damages. When the case was first before us we were of opinion that, under recent decisions of the Supreme Court, there was a lack of jurisdiction in the federal courts to entertain it; and we accordingly affirmed a decision dismissing the case for lack of jurisdiction. 4 Cir., 140 F.2d 35. Our decision was reversed by the Supreme Court, and the case was remanded to us to consider jurisdictional questions arising out of service of process. 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187. We thereupon held that there had been sufficient service of process to bring the defendants before the court and remanded the case to the District Court for further proceedings. 4 Cir., 148 F.2d 403.

When the case came before the District Court on the remand, both parties moved for summary judgment on the pleadings and affidavits filed. On the admitted facts, the Court entered judgment for plaintiff declaring that the defendant Brotherhood was the exclusive representative of the firemen employed by the defendant railway company for the purposes of collective bargaining under the Railway Labor Act, 45 U.S.C.A. § 151 et seq.; that it was the duty of the brotherhood to represent impartially and without hostile discrimination the plaintiff and the other Negro firemen, constituting a minority group denied membership in the Brotherhood; that the Brotherhood had violated this duty by negotiating with the railway company agreements of February 18, 1941 and May 23, 1941, which discriminated against Negro firemen and resulted in plaintiff's being removed from a run to which he was entitled by seniority; that the agreements were null and void in so far as they deprived plaintiff and other Negro firemen of seniority and employment rights; and that plaintiff had been illegally removed from his run and was entitled to be restored thereto. The defendants were enjoined

from giving force or effect to the agreements in so far as they interfered with the occupation of plaintiff or of the class represented by him, and the defendant railway company was directed to restore to plaintiff his seniority rights in the run from which he had been removed as a result of the agreements. The case was reserved for hearing before a jury on the issue of damages, which were duly assessed at the sum of $1,000.00, representing approximately the difference between wages received by plaintiff and wages to which he would have been entitled at the rate prevailing on the run which had been improperly taken from him. The facts are fully stated in the opinion of the District Judge. See D.C., 69 F.Supp. 826. Those which are pertinent may be briefly summarized as follows:

The Brotherhood represents all locomotive firemen employed by the defendant railway company for purposes of collective bargaining under the Railway Labor Act, having been selected as bargaining agent by a majority of the craft. Negro firemen, who constitute a minority of the craft, are not admitted to membership in the Brotherhood, but, nevertheless they must accept it as their bargaining representative, since it is the choice of the majority. Matters of great importance to locomotive firemen in the realm of collective bargaining are seniority rights and the right to promotion to the more highly paid position of locomotive engineer. Upon seniority depends the right to the more desirable runs and upon the right to promotion depends the possibility of advancing to the position of engineer. No railway company of the United States has ever employed a Negro as a locomotive engineer and the Negro firemen are recognized as non-promotable to that position. Other firemen, if they possess the requisite mental and physical qualifications, are given opportunity to stand examinations for promotion to engineer, but not Negro firemen; and, because they are not promoted, Negroes serve for long periods as firemen and the seniority thus acquired enables them to obtain some of the best paid and most desirable runs in the company's service.

The Brotherhood, as bargaining agent for all locomotive firemen in the Southeast, obtained from defendant railway and other Southeastern carriers, over their protest, contracts which had the effect of denying to a large number of Negro firemen desirable runs to which they were entitled by seniority and of giving these runs to white firemen. The Brotherhood accomplished this by contracts distinguishing between promotable and non-promotable firemen. On March 28, 1940, it made a demand on the defendant railway company and other Southeastern carriers to modify existing working agreements so that only "promotable" men would be employed as firemen. The carriers refused to agree to this, saying:

"As we understand this proposal, it is that the carriers parties to the conference obligate themselves that they will in future hire no non-promotable men. The effect of this would be to exclude from employment in our service perhaps a small number of white persons who, because of educational qualifications or physical handicaps, might not be promotable, and, in addition, would exclude from employment all colored persons, because, upon the properties represented by this committee, colored employees are not promotable to position of engineer. In our conference we endeavored to point out to you that we doubted the wisdom and fairness of making any such agreement as this, first because it would restrict the field from which we might draw employees in the event of a labor shortage, and, second, because we did not feel that such a large proportion of the population of the territory which we serve should be completely banned from employment as firemen upon our properties. As we said to you, these people are citizens of the country; it is necessary that they make a living; colored people are patrons of the railroads, and, in our opinion, we should not by agreement entirely exclude them from employment in positions which they have occupied and filled over the years."

Notwithstanding this protest of the railroads, the Brotherhood insisted upon its position, contending that it was in the interest of efficiency in the operation of the railroads that experience as firemen be acquired by men who could be advanced to

the more responsible position of engineer, and that it was not fair to recently promoted engineers, to require that when they had to serve as firemen, as they frequently did, they take the less desirable runs. The Brotherhood finally succeeded, on February 18, 1941, in obtaining a modification of existing agreements to provide that the proportion of non-promotable firemen should not exceed fifty per cent in each class of service established as such on each individual carrier and that, until such percentage was reached on any seniority district, only promotable men should be hired and all new runs and vacancies should be filled by promotable men. As a result of this last provision plaintiff was denied a desirable passenger run to which he was entitled by seniority.

That the purpose as well as the effect of this provision was to eliminate Negro firemen from the railroad service, and not merely to eliminate all who were non-promotable in the interest of greater efficiency in the service, is shown by the modification of the agreement made on May 23, 1941, which provides:

"It is understood and agreed that the phrase 'non-promotable fireman' carried in paragraph I of the above quoted agreement *refers only to colored firemen.*

"It is agreed that promotable firemen now in the service who are physically qualified and not otherwise restricted, who have heretofore been called for examination for promotion and failed, or who have waived promotion, will be called for examination for promotion between May 1 and May 15, 1942. *In the event such firemen fail to pass examination for promotion, or waive examination, their seniority as firemen shall not be affected."* (Italics supplied).

In other words, only a colored fireman, not a non-promotable white fireman, would be barred from employment because fifty per cent of the employees in that class of the service were non-promotable. Furthermore, white firemen could fail to pass examinations or refuse to take examination without affecting their seniority, and thus put themselves in position to take the positions from which the Negro firemen were excluded because "non-promotable"

On these facts we think that plaintiff was clearly entitled to the judgment entered. There was, unquestionably, discrimination by the bargaining agent based on race which falls squarely within the condemnation of the rule laid down by the Supreme Court in Steele v. Louisville & N. R. Co., 323 U.S. 192, 202-203, 65 S.Ct. 226, 232, 89 L.Ed. 173, where the Court said:

"We think that the Railway Labor Act imposes upon the statutory representative of a craft at least as exacting a duty to protect equally the interests of the members of the craft as the Constitution imposes upon a legislature to give equal protection to the interests of those for whom it legislates. Congress has seen fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents, cf. J. I. Case Co. v. National Labor Relations Board, supra, 321 U.S. [332], 335, 64 S. Ct. 576, 579, [88 L.Ed. 762], but it has also imposed on the representative a corresponding duty. We hold that the language of the Act to which we have referred, read in the light of the purposes of the Act, expresses the aim of Congress to impose on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them."

It is argued that the discrimination of the contract obtained by the Brotherhood was not based on race, but on "promotability" of firemen, which was a matter having direct relation to the good of the service as to which the Brotherhood could exercise its discretion without being called to account. The answer is that the modification of May 23rd. quoted above, shows beyond peradventure that considerations of race were at the basis of the action taken, else why should non-promotable firemen be defined as colored firemen, and why should white firemen who failed to put themselves in line for promotion be protected in their seniority rights?

And quite apart from the purpose to discriminate shown by the quoted provision of the agreement of May 23rd, it is

clear that a bargaining agent which denies membership to Negro members of a craft which it represents cannot justify in law or in reason the use of its power to force a contract from its employer, the effect of which is to discriminate against the Negro minority which it represents. The effect of racial discrimination is not avoided by basing it ostensibly on some other factor. In City of Richmond v. Deans, 4 Cir., 37 F.2d 712, we held that a zoning ordinance which in effect discriminated on grounds of race would not be upheld merely because it was based on the legal prohibition of intermarriage, which was itself based on racial grounds. So here discrimination against Negro employees cannot be sustained merely because it purports to be based on promotability, which is itself based on race.

The fact that the railroads have discriminated against Negroes in the matter of promotability, does not justify the Brotherhood, which represents them as bargaining agent, in making a further discrimination based on that discrimination. Because the railroads do not permit Negroes to hold the position of engineer, is no reason why a bargaining agent representing them should use its bargaining power to deprive them of desirable positions as firemen which the railroads do permit them to hold. This seems so elementary as not to permit of argument. Such action by a bargaining representative clearly violates the rule laid down by the Supreme Court in the Steele case, supra, as to what is permissible in collective bargaining. The Court said:

"This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit. Cf. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509, 510, 512, 57

S.Ct. 868, 872, 873, 874, 81 L.Ed. 1245, 109 A.L.R. 1327 and cases cited; Washington v. Superior Court, 289 U.S. 361, 366, 53 S.Ct. 624, 627, 77 L.Ed. 1256, 89 A.L.R. 653; Metropolitan Casualty Co. v. Brownell, 294 U.S. 580, 583, 55 S.Ct. 538, 540, 79 L.Ed. 1070. Without attempting to mark the allowable limits of differences in the terms of contracts based on differences of conditions to which they apply, it is enough for present purposes to say that the statutory power to represent a craft and to make contracts as to wages, hours and working conditions does not include the authority to make among members of the craft discriminations not based on such relevant differences. Here the discriminations based on race alone are obviously irrelevant and invidious. Congress plainly did not undertake to authorize the bargaining representative to make such discriminations. Cf. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Yu Cong Eng v. Trinidad, 271 U.S. 500, 46 S.Ct. 619, 70 L.Ed. 1059; Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Hill v. Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559."

It is argued that the Brotherhood may not be held liable for damages because it was given a discretion with respect to bargaining and because it is a non profit organization. No authority is cited to sustain this proposition, and we know of none. No reason occurs to us why an organization which has used its power as bargaining agent in violation of the rights of those for whom it undertakes to bargain, and has thereby inflicted injury upon one of those whom it professes to represent, should not respond in damages for the injury so inflicted. If liability were thought to be a subject of doubt in such case, we might find helpful analogy in the cases which hold to accountability an agent who has violated the duty which he owes those for whom he acts or in the cases which establish liability for interference with contract. It is not necessary, however, to go to these, as the Supreme Court in the Steele case, supra, has definitely ruled that such liability exists. See 323 U.S. at page 207, 65 S.Ct. 226, 89 L.Ed. 173.

Affirmed.