GRAHAM et al. v. SOUTHERN RY. CO. et al.

Civil Action No. 4330—47.

District Court of the United States for the District of Columbia.

Nov. 25, 1947.

Irving J. Levy, of Washington, D. C., for the plaintiffs, for the motion.

Lester P. Schoene and Milton Kramer, both of Washington, D. C., for defendant Brotherhood of Locomotive Firemen and Enginemen, opposed.

Robert R. Faulkner, of Washington, D. C., for defendant Atlantic Coast Line R. R. Co., opposed.

Henry L. Walker and William B. Jones, both of Washington, D. C., for defendant Southern Ry. Co., opposed.

Robert I. Stern, of Washington, D. C., for the United States of America as amicus curiæ.

Frank J. Wideman, of Washington, D. C., and James B. McDonough, of Norfolk, Va., for Seaboard Air Line R. R. Co. as amicus curiæ.

HOLTZOFF, Justice.

This is a motion for a preliminary injunction in a class suit brought by a number of locomotive firemen employed by the Atlantic Coast Line Railroad Company and the Southern Railway Company. The suit is brought against the railroad companies and against the Brotherhood of Locomotive Firemen and Enginemen, which is the bargaining agency under the Railway Labor Act in behalf of the locomotive firemen employed by the two railroads.

The complaint alleges that the defendants have entered into bargaining agreements by virtue of which the plaintiffs, and other members of the class, all of whom belong to the negro race and who are euphemistically known as non-promotable firemen, are being unfairly discriminated against in a manner that did not exist under the previous hiring practices of the two railroads. Specifically it is charged that non-promotable firemen at times lose their seniority rights and sometimes even their employment when steam power is displaced by Diesel power on any run on which a non-promotable fireman is employed, and that at times a person with less seniority is hired as a helper on a Diesel engine when a Diesel engine replaces steam power.

As the Court views this action, it is primarily against the Brotherhood because the complaint shows that the Brotherhood was instrumental in securing such discriminatory action on the part of the railroads.

We are dealing here with the law regulating the duties of an agent toward his principal. No one is compelled or required to undertake an agency, but one who voluntarily assumes the task owes the duty of acting in the utmost good faith toward his principal. An agent is a fiduciary. If the principal is a group of individuals, this obligation extends to each member of the group. The agent is bound to represent the interest of each member of the group fairly and with equal zeal. He may not neglect some of the members, prefer some as against others, or discriminate among them. He may not advance the interests of some to the prejudice of others. This is implicit in the fiduciary relationship that exists between every agent and his principal, be that principal a single individual or a group of individuals.

Applying these general principles to the situation presented in this case, the Brotherhood was under no obligation to become a bargaining agent for the employees within its craft. Having sought to do so, and having been elected to that position of trust, the Brotherhood is in duty bound to represent fairly not only its own membership, but all the employees in whose

behalf it has authority to bargain. The Brotherhood must advance equally and in good faith the interests of every individual fireman whom they represent, without preference or discrimination among them. The only permissible distinctions may be those based on seniority, efficiency, reliability, aptitude and similar considerations bearing on the quality of services rendered by the employees. No line may be drawn arbitrarily on any other basis.

■ A bargaining agent under the National Labor Relations Act or under the Railway Labor Act is but an agent for a principal, and not an independent contractor. His principal is the entire group of employees whom the agent represents. This is made clear by Section 2 of the Railway Labor Act,[1] and Section 7 of the National Labor Relations Act,[2] which assure to employees the right "to bargain collectively through representatives of their own choosing." The important word in this connection is the word "representatives." The bargaining agent is a representative, not an independent contractor. He is clothed with all the rights of a representative, but is subject to all the fiduciary obligations of a representative.

In the last analysis, the question is whether an employee who has a good record of efficiency and who has acquired rights based on seniority by dint of long and faithful service may be deprived of his employment by the arbitrary action of the bargaining agent, who purports to act in behalf of the entire group of which the unfortunate employee is a member. It seems to the Court that the question answers itself. We are not dealing here with any of the baffling problems and complex situations arising out of race relations. This is not a matter of race distinction in social relations between man and man. This is a matter of arbitrary classification in labor relations. The problem that confronts us is simply this: May a faithful employee who has earned a place for himself by a long period of service be stripped of his means of livelihood by his own bargaining agent? To the individual immediately concerned such an eventuality would be a disaster. To permit such a tragic result would be to tolerate a grave injustice. The law does not allow an agent to act in this manner toward any member of the group which he represents.

The final question is whether a preliminary injunction should be granted. The Court is not unmindful of the proposition that preliminary injunctions should be granted sparingly and hardly ever if they would disturb the status quo. There are exceptions, however.

In this case we already have rulings by the Supreme Court of the United States and by the Circuit Court of Appeals for the Fourth Circuit condemning as illegal the specific practices set forth in the complaint. Consequently, no doubtful question of law is involved.

In the case of Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 230, 89 L.Ed. 173, Mr. Chief Justice Stone condemned practices that were very similar to those of which the plaintiffs complain, and held that agreements and activities of the type described in the complaint are violations of the Railway Labor Act. Mr. Chief Justice Stone said:

" * * * Congress, in enacting the Railway Labor Act and authorizing a labor union, chosen by a majority of a craft, to represent the craft, did not intend to confer plenary power upon the union to sacrifice, for the benefit of its members, rights of the minority of the craft, without imposing on it any duty to protect the minority."

He further stated that "the representative is to act on behalf of all the employees which, by virtue of the statute, it undertakes to represent."

More recently the Circuit Court of Appeals for the Fourth Circuit, in the case of Brotherhood of Locomotive Firemen and Enginemen v. Tunstall, 163 F.2d 289, in which Judge Parker spoke for a unanimous bench, also condemned practices of the kind here complained of. A judgment in behalf of the plaintiffs for an injunction and damages was affirmed.

[1] U.S.C.A., Title 45, § 152, clause 4.  [2] U.S.C.A., Title 29, § 157.

The law, therefore, is clear. This circumstance, it seems to the Court, operates to render this case an exception to the rule that ordinarily preliminary injunctions which might disturb the status quo should not be granted.

 It is objected, however, that the Norris-LaGuardia Act [3] precludes the granting of the injunction. It seems to the Court that this objection is answered by the case of Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 563, 57 S.Ct. 592, 81 L.Ed. 789. In that case the Court was confronted with a suit by a labor union against an employer to compel the latter to bargain collectively. The Supreme Court held that an application for an injunction of this type is not within the prohibitions of the Norris-LaGuardia Act. In this case we have a situation which is parallel in principle if not in fact. Here members of the craft seek an injunction to require the bargaining agent to perform its bargaining function faithfully. In the Court's opinion the Norris-LaGuardia Act does not apply. The Court is impressed also by the circumstance that in the Steele case and in the Tunstall case, which was before the Circuit Court of Appeals on two occasions, the Norris-LaGuardia Act was apparently never even mentioned.

The Court realizes that the railroads have a public duty to perform. Their function is to run the trains, and in the performance of their obligation they may be constrained to enter into agreements with labor unions to prevent interference with the operation of the line. For this reason the Court will not grant any injunction against the railroads. The Court will, however, grant a preliminary injunction against the Brotherhood to enjoin and restrain the Brotherhood from insisting on any departure on the part of the railroads from previously existing hiring practices, if such departures will result in any discriminatory action as against any member of the group represented by the plaintiffs. The precise phraseology of the injunction to be granted will have to be determined on a settlement of the order to be made pursuant to the Court's decision.

Preliminary injunction granted as against the defendant Brotherhood of Locomotive Firemen and Enginemen, only.

---

[3] U.S.C.A., Title 29, §§ 101 and 113.