**SALVANT v. LOUISVILLE & N. R. CO. et al.**

**No. 1441.**

United States District Court
W. D. Kentucky, Louisville Division.

Feb. 1, 1949.

392

Charles H. Houston, of Washington D. C., Charles W. Anderson, Jr., of Louisville, Ky., and Joseph C. Waddy, of Washington, D. C., for plaintiff.

H. T. Lively, J. P. Hamilton and J. L. Lenihan, all of Louisville, Ky., for Louisville & N. R. Co.

T. M. Galphin, Jr., of Louisville, Ky., Ralph M. Hoyt, of Milwaukee, Wis., and Harold C. Heiss, of Cleveland, Ohio, for Brotherhood & Lodges.

SWINFORD, District Judge.

This is an action seeking an injunction to which the plaintiff asserts he is entitled on the following facts:

The plaintiff is a Negro citizen of the United States and resident of Mobile, Alabama. He is a locomotive fireman employed by the defendant Louisville & Nashville Railroad Company. He brings this action as a class action on behalf of all Negro employees similarly situated. He bases his claim to jurisdiction on the Fifth Amendment to the Constitution of the United States, the Railway Labor Act, 45 U.S.C.A. Chapter 8, the Civil Rights Act, 8 U.S.C.A. §§ 41 and 43, the Judiciary Act, Section 24, as amended, 28 U.S.C.A. § 41(8) and (12) [now §§ 1337, 1343], and on Federal Rules of Civil Procedure, rules 17(b) and 23(a), 28 U.S.C.A.

The plaintiff and all those whom he claims to represent are working under a contract with the railroad company. The contract, dated March 1, 1929, is identified in the record as "Agreement" between the Louisville & Nashville Railroad and its Locomotive Firemen and Hostlers and was and is in effect at all times within which this controversy is concerned.

This agreement with its amendments and changes was negotiated on behalf of the employees by the defendant, the Brotherhood of Locomotive Firemen and Enginemen, as representatives of all members of the craft to which the plaintiff belonged.

On January 26, 1948, the Brotherhood, as such representative, sought a conference with the employer looking to a change in the agreement pertaining to promotion of firemen and issued notice of this proposed conference. I set forth the allegations of the complaint and the notice incorporated in the body of the complaint, which read as follows:

"From the formation of its organization in 1873 down to the present time the Brotherhood has been committed to a program of eliminating Negro locomotive firemen from railroad service and replacing them with white locomotive firemen, members or potential members of the Brotherhood. In furtherance of said purpose the Brotherhood on or about January 26, 1948, served on most of the railroads in the Southeastern part of the United States, including the defendant railroad, the following Notice under the Railway Labor Act:

" 'Brotherhood of Locomotive Firemen and Enginemen

" '26 January 1948

" '_____

" '_____

" '_____

" 'Dear Sir:

" 'This is to advice that the employes of the ——————— constituting the craft or class represented by the Brotherhood of Locomotive Firemen and Enginemen, have through their duly constituted representatives, approved the following proposal for addition to and or revision of the existing agreement or agreements:

" '1. All firemen and helpers now in service or hereafter employed shall be in line for promotion to the position of locomotive engineer. Each fireman and helper shall be called in seniority order and required to take examinations for promotion. Those who pass such examinations and meet all other requirements for promotion will be promoted to engineer. Those who decline to take the examinations or fail to qualify for promotion shall be dismissed from the service.

" '2. All firemen and helpers who heretofore failed to pass, declined to take, or were not called for promotional examinations shall, subject to the provisions of Section 1 above, be called for promotion and required to pass the necessary examinations and otherwise qualify for promotion within a reasonable length of time (to be agreed upon) from the effective date of this agreement.

" '3. Eliminate all provisions of existing agreements which limit in any manner the exercise of seniority of firemen and helpers, hostlers and hostler helpers.

" '4. All provisions of existing agreements not in conflict with or modified by the foregoing shall remain unchanged.

" 'In accordance with the terms of the existing agreement, and in conformity with the provisions of the Railway Labor Act, as amended, please accept this as the required formal notice of our desire to revise and or eliminate portions of the existing agreement or agreements to the extent indicated.

" 'The same request, as of this date, is being presented to the managements of practically all railways situated in the Southeastern District.

" 'It is hereby requested that all lines or divisions of railway controlled by the ———— ———— shall be included in settlement of this proposal and that any agreement reached shall apply alike to all such lines or divisions.

" 'It is desired that reply to this proposal be made in writing to the undersigned on or before February 5, 1948, concurring therein or fixing date within thirty (30) days from the date of this notice when conference with you may be had for the purpose of discussing the proposal. In event adoption of this proposal is not agreed to in conference, it is suggested that this company join with the managements of other carriers in authorizing a conference committee to represent them in dealing with the subject on a concerted basis.

" 'Yours very truly,

" 'Chairman.' "

"When the Brotherhood was formulating the proposal expressed in the aforesaid Notice and when it served the Notice, the Brotherhood well knew that the porposal called for a revoluntionary change in operating practices by the carriers affected, might well affect the policy of the carriers in the future hiring of Negro locomotive firemen, and could not help but drastically affect the employment status of all Negro locomotive firemen now in service; nevertheless the Brotherhood wilfully and with deliberate intent to harm and prejudice the Negro locomotive firemen formulated said notice and proposal without giving the Negro locomotive firemen any notice, opportunity to be heard or otherwise participate in the formulation of said proposal or in the determination of whatever policy lies behind it; refused to give them any notice or opportunity to be heard regarding the timing of said Notice; but although specifically requested by the Negro firemen for information refused to disclose anything and kept the whole matter secret within the Brotherhood organization until after the Notice was served on the carriers.

"Plaintiff specifically avers that in making the proposal and serving the Notice of January 26, 1948, without first affording the non-member Negro locomotive firemen notice and opportunity to be heard and to participate in the formulation of the policy behind said Notice in all its implications, and in withholding from them vital information concerning the attitude of its own officers and members regarding the same, the Brotherhood as their statutory representatives has deprived them of their civil and property rights without due process of law as guaranteed them under the Fifth Amendment has denied them the equal protection of the laws guaranteed them by the Civil Rights Act, and has deliberately withheld from them the fair and impartial representation they were entitled to under the Railway Labor Act."

The plaintiff charges that the Brotherhood, as his statutory collective bargaining representative under the Railway Labor Act, has wilfully and maliciously misrepresented his interests as a member of the craft. He asks that it be prevented from further representing him so long as it denies him full participation in the formation and execution of collective bargaining policies and in selection, control over or removal of Brotherhood officers or agents selected to represent the craft in bargaining policies. All of which he declares to be the purpose and intention and within the meaning of the Railway Labor Act.

This action presents squarely the question of the Negroes' right to participate directly in the choosing of those who are to represent them in negotiating agreements with their employer. Whether this is adequately covered by the Railway Labor Act or if it is covered whether requirements of the Act have not been properly observed

is a question to be determined on a final submission of the case.

The plaintiff seeks a permanent injunction against the further bargaining by the Brotherhood as his statutory representative unless he is given greater participation in the selection of representatives. He seeks an injunction pendente lite prohibiting the negotiations proposed by the notice of January 26, 1948. This relief is asked against both the Brotherhood and the railroad. Process has been served upon the railroad, the three local lodges and upon L. E. Whitler, the local General Chairman of the Brotherhood, found in this district.

The defendants, by motion, have raised the question of jurisdiction which must be first considered before passing upon the prayer and motion for injunctive relief pendente lite.

It is disclosed by the record that by Order of March 1, 1948, The Honorable Roy M. Shelbourne, District Judge, sitting in this case, heard arguments on motions to dismiss, which necessarily raised the questions of jurisdiction and venue, and overruled the motions insofar as the railroad and three local lodges were concerned. The Brotherhood at that time was not properly before the court.

On March 19, 1948, Judge Shelbourne heard arguments and overruled motions to dismiss as to all of the defendants. Apparently from the record questions of jurisdiction and venue have already been passed upon.

█ It has long been the rule in Federal Courts that a Judge should not reconsider matters of record that have been ruled upon by a Judge of co-ordinate jurisdiction in the same case. The wisdom and soundness of this rule cannot be questioned.

A review of the decisions has been set forth in the case of Commercial Union of America, Inc. v. Anglo-South American Bank, 2 Cir., 10 F.2d 937, 938. The language from that case is:

"In Appleton v. Smith, 1 Fed.Cas. 1075, Fed. Cas. No. 498, Justice Miller (of the Supreme Court) sitting as a Circuit Justice in the district of Arkansas, in 1870, had before him a motion to quash an attachment

levied on goods. He denied the motion, and in doing so said:

" 'Upon looking into the record of the case, I find that the same motion, based upon the same legal proposition, was made at the last term of the court, and was overruled by the last district judge, who at that time held the court. I have repeatedly decided in this circuit, since I was first assigned to it, that I would not sit in review of the judgments and orders of the court, made by the District Judges in my absence. Where, as in the present case, the motion is made on the same grounds, and with no new state of pleadings or facts, it is nothing more than an appeal from one judge of the same court to another, and though it is my province in the Supreme Court to hear and determine such appeals, I have in this court no such prerogative. The district judge would have the same right to review my judgments and orders here as I would have in regard to his. It would be in the highest degree indelicate for one judge of the same court thus to review and set aside the action of his associate in his absence, and might lead to unseemly struggles to obtain a hearing before one judge in preference to the other. I have also held, and have prescribed it for myself as a rule of conduct, that the presence of the District Judge, and his consent to a review of his decision, will not vary the course to be pursued.' "

Also see a more recent case from the Second Circuit Court of Appeals which cites this case with approval, Cherry et al v. Howell et al., 66 F.2d 713.

█ Notwithstanding the fact that this motion seems to have been previously ruled upon by a judge of co-ordinate jurisdiction, I have heard arguments and will treat the motion as if no such order had been entered. I make this exception to the rule in the light of certain statements made by attorneys for the defendant, Brotherhood, in their brief, to the effect that it was the expressed purpose of Judge Shelbourne to study the question further and not to consider his ruling of March 18, as final. These statements by the attorneys are not seriously refuted and I feel in fairness the question should be reconsidered.

396

■ I can find nothing in the record which would raise serious question of venue or jurisdiction as to the three local lodges or the railroad. They are all residents, citizens and inhabitants of the Western District of Kentucky, were properly served with process and there is nothing in the record or any argument advanced that seriously disputes the jurisdiction of the court or the venue of the action.

The motion as to these defendants should without further comment be overruled.

The Brotherhood raises a more serious question. It is an unincorporated association of subordinate lodges with its principal office and place of business in Cleveland, the Northern District of Ohio. There are more than nine hundred of these local lodges scattered at various places throughout the United States, but all of whom are bound together and head up through the National Organization of which the Brotherhood is the combining entity. A sort of holding company to which locals pay dues and through which they work for their mutual benefit nationally. Thus, while it is an unincorporated association, it is never-the-less a jural entity separate and apart from the subordinate lodges. It is an inhabitant or resident of the Northern District of Ohio.

Section 51 of the Judicial Code, 28 U. S.C.A. § 112 [now § 1391] provides:

" * * * no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; * * *."

■ Regardless of arguments advanced by the plaintiff or the justice of the cause a federal court is a court of limited jurisdiction, a creature of statute whose activities and powers are circumscribed by Congress.

Counsel for the plaintiff makes the following argument: "The principle we contend for is simple and definite; it gives the Brotherhood one single residence for venue purposes so far as the collective bargaining procedures under the Railway Labor Act are concerned. It ties down power, with workable accountability to the Federal judicial process. It accords with the realities of the situation under which the Brotherhood has divested the central office of all power of collective bargaining on the Louisville and Nashville, and delegated it exclusively to the localized General Grievance Committee on the Louisville & Nashville which exists nowhere but Louisville."

This may be a good argument to advance to a committee of Congress to urge amendment to the general venue statute, but it does not justify the court in reading into the present statute virtue or lack of virtue which it does not have. The Congress was aware of existing limitations on jurisdiction and venue at the time the Railway Labor Act was passed. It must be presumed to have intended to require conformity to this general venue statute as it had been applied and interpreted, otherwise specific venue and jurisdictional provisions would have been incorporated in the Act. Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119.

■ There cannot be dispute but that this unincorporated association must be considered a jural person or entity as if it were an individual or corporation. That question is definitely settled in Sperry Products, Inc., v. Association of American Railroads et al., 2 Cir., 132 F.2d 408, 145 A.L.R. 694, wherein it is stated that an association such as this was present wherever any substantial part of its activities were continually carried on. Since Cleveland, Ohio, is the place of inhabitancy of the Brotherhood, Section 51 must fix the place where it as a jural entity must be sued. The identical question was passed on by the Court of Appeals for the District of Columbia in an opinion handed down on October 26, 1948, in the case of Brotherhood of Locomotive Firemen and Enginemen (the same association here involved) v. Graham et al., —— F.2d ——. There the court held that the venue of an action against the Brotherhood lay in Cleveland and not in the District of Columbia and under the provision of the Judicial Code, 28 U.S.C.A. § 1406(a), transferred the case to the Northern District of Ohio. I must conclude that insofar as the Brotherhood is concerned in this respect venue does not lie in this district in this phase of the case.

This court must retain jurisdiction, however, on the ground that this is a class action under Rule 23(a). Without extended discussion suffice it to say the allegations contained in the complaint and exhibits in the record, which must be accepted as true on this motion, show that all colored firemen on the railroads manned by members of the defendant lodges and all white members of the craft are directly affected by the proposed amendment to the existing agreement. The fact that no Negroes are employed north of Nashville on this division and the plaintiff is not in this division of operation is not a test. The agreement extends to all members of the craft. This is an effort to change the whole plan of making agreements and is therefore the concern of all members of the craft.

I cannot distinguish this case from the case of Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 4 Cir., 148 F.2d 403, 404, wherein the same objection was made by the same defendant Brotherhood. There a Negro fireman sued the Brotherhood and certain local lodges and individuals. · The Court of Appeals for the Fourth Circuit, in holding the case to be properly within the jurisdiction of the district court as a class action, said: "The right to bring a class suit to enforce the liability of an unincorporated association existed long prior to the adoption of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. Smith v. Swormstedt, 16 How. 288, 302, 303, 14 L.Ed. 942. In Story's Equity Pleading, from which quotation is made in the case cited, Mr. Justice Story arranges the cases in which a class suit is proper as follows: '1. Where the question is one of a common or general interest, and one or more sue or defend for the benefit of the whole. 2. Where the parties form a voluntary association for public or private purposes, and those who sue or defend may fairly be presumed to represent the rights and interests of the whole; and 3. Where the parties are very numerous, and though they have or may have separate and distinct interests, yet it is impracticable to bring them all before the court.' See also 39 Am.Jur. pp. 920-921, 924. That an unincorporated labor association may sue and be sued in equity in a class suit, with the suit brought by or against representatives of the class is but an application of the well settled general rule."

And further in the same opinion we find this language which to me seems unanswerable in its pertinence to the problem in the instant case:

"The federal rules have in no wise limited or restricted the right to bring class suits in proper cases. Rule 23 provides for them; and, in a note to the rule, the Rules Committee states that it is a substantial restatement of the former equity rule as that rule has been construed by the courts. Subsection a(1) of the rule provides for class actions where the character of the right sought to be enforced for or against the class is joint or common and the persons constituting the class are so numerous as to make it impracticable to bring them all before the court, the typical case of suit by or against an unincorporated association. Professor Moore in Federal Practice vol. 2, p. 2235 et seq. cites suits against unincorporated associations as typical of what he calls the 'true class suit' under this rule, i. e. a suit wherein, but for the class action device, the joinder of all interested persons would be essential.

"And there is nothing in rule 17(b) which limits the right to bring a class suit under rule 23(a) in proper cases. Rule 17(b) relates to capacity to sue or be sued; and it provides that, where a partnership or unincorporated association has no such capacity by the law of the state where the court is held, it may nevertheless sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States. There is nothing in this that limits the right to bring the unincorporated association into court by means of a class suit in accordance with the prior practice; and the right to bring such class suit continues to be of great value when the right to sue the association in its common name is, for any reason, unavailable. Instances where it is not available are cases where jurisdiction based on diversity would be defeated by a suit by or against the association but not by a suit by or against representatives

or where, as here, it is not possible for the plaintiff to serve process on the association within a convenient jurisdiction. See Moore's Federal Practice vol. 2 p. 2236; Philadelphia Local 192 etc., v. American Federation of Teachers, D. C., 44 F.Supp. 345. The manifest purpose of the provision of rule 17(b) relating to suits against partnerships and unincorporated associations is to add to, not to detract from, the existing facilities for obtaining jurisdiction over them. The language of rule 17(b) relating to suits against partnerships and unincorporated associations is permissive. So also is the language of rule 23(a). Together they provide alternative methods of bringing unincorporated associations into court."

Counsel relies upon Brotherhood of Locomotive Firemen and Enginemen v. Graham, supra, I do not have the record in that case before me, but judging from the opinion there is a distinction. It recites that from evidence before the court it appeared that certain of the defendants were not employees of the carrier and could not be affected by the agreement. It further recited that the local lodges and the named individuals did "not appear" to have co-extensive with the Brotherhood, an interest in the outcome of the case.

It would be ignoring realities to say that such is the case here. All employees of the Brotherhood and all members of the local lodges and all persons whom the plaintiff represents have co-extensive interests with each other in any agreement or amendment to an agreement between the craft and defendant railroad company.

This is a class action properly brought and within contemplation of Rule 23(a), F.R.C.P., and on authority of Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, supra.

The final question for determination on this submission is the plaintiff's motion for an injunction pendente lite.

The requested injunctive relief as to the railroad should be denied. The railroad is a public service corporation under strict obligation to run trains and serve the public. It was required by law to recognize the right of the union to bargain collectively and consequently bargained with the representatives of the craft whom it had a right to assume were acting in accordance with their lawful authority. It was either accept these union representatives as their credentials warranted or stop operations. The railroad could not jeopardize the operation of its system while it litigated with the union the questions involved in this law suit.

The railroad must continue to act under its contract and the adjustments prompted by this judgment. This is mandatory as a duty of the carriers, their officers, agents and employees to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and its employees. Railway Labor Act, 45 U.S.C.A. § 152, First and Sixth; Elgin J. & Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886.

The language of the court in Graham et al. v. Southern Railway et al., D. C., 74 F.Supp. 663, 666, is pertinent to my determination of this question: "The Court realizes that the railroads have a public duty to perform. Their function is to run the trains, and in the performance of their obligation they may be constrained to enter into agreements with labor unions to prevent interference with the operation of the line. For this reason the Court will not grant any injunction against the railroads."

The real controversy is between the plaintiff and the Brotherhood. It may be assumed, insofar as this litigation has progressed, that the railroad must either willingly or unwillingly treat with representatives of the craft and whether that craft is composed partly of Negroes or not. The issue is whether the Brotherhood by suggesting the amendment to the agreement as set forth in the notice of January 26, 1948, is trying to freeze the Negro out of the craft, which it, as statutory representative, is serving.

If the plaintiff's allegations are true there can be no question but what he will be severely damaged. If his inferences from the import of the result of such a meeting are justified he is being discriminated against solely because he is a Negro. If

that be true he is entitled to the protection of this court by an order of injunction. There can be no serious dispute about the law applicable. The Supreme Court has settled the question in Steele v. Louisville & Nashville Railroad Co. et al., 323 U.S. 192, 65 S.Ct. 226, 230, 89 L.Ed. 173. Since the whole opinion in that case is so important to the determination of the instant case it is needless to undertake to quote any portion of it. However, the following quotation might be said to sum up the law applicable: "But we think that Congress, in enacting the Railway Labor Act and authorizing a labor union, chosen by a majority of a craft, to represent the craft, did not intend to confer plenary power upon the union to sacrifice, for the benefit of its members, rights of the minority of the craft, without imposing on it any duty to protect the minority. Since petitioner and the other Negro members of the craft are not members of the Brotherhood or eligible for membership, the authority to act for them is derived not from their action or consent but wholly from the command of the Act.

And further in the opinion this language appears:

"The labor organization chosen to be the representative of the craft or class of employees is thus chosen to represent all of its members, regardless of their union affiliations or want of them. As we have pointed out with respect to the like provision of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. in J. I. Case Co. v. National Labor Relations Board, supra, 321 U.S. [332], 338, 64 S.Ct. [576], 580, 88 L.Ed. 762, 'The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group. Its benefits and advantages are open to every employee of the represented unit * * *.' The purpose of providing for a representative is to secure those benefits for those who are represented and not to deprive them or any of them of the benefits of collective bargaining for the advantage of the representative or those members of the craft who selected it.

"As the National Mediation Board said in In The Matter of Representation of Employees of the St. Paul Union Depot Company, Case No. R–635: 'Once a craft or class has designated its representative, such representative is responsible under the law to act for all employees within the craft or class, those who are not members of the represented organization, as well as those who are members.'"

The case of Brotherhood of Locomotive Firemen and Enginemen et al. v. Tunstall, 4 Cir., 163 F.2d 289, in which certiorari was denied, 332 U.S. 841, 68 S.Ct. 262 fully expresses the whole law of the case. That case was on a final submission, but the issues there were similar and reasons given for the decision apply with equal force to the motion for an injunction pendente lite.

I believe the record justifies the court in granting the injunctive relief sought. If on a final hearing the evidence does not sustain the allegations the Brotherhood has suffered no real injury. Let's get at the facts while we maintain the status quo. A delay in the commencement of negotiations between the Brotherhood and railroad anent the notice of January 26, 1948, until the conclusion of this litigation will not seriously affect the rights of members of the craft whose representatives instigated the proposal. This is especially true since, as pointed out in the Brotherhood's brief, the present practice has prevailed "since the inception of the railroad industry in this country."

The judge of this court sat with the Court of Appeals for the Sixth Circuit in 1942 when the case of Teague v. Brotherhood of Locomotive Firemen and Enginemen, 127 F.2d 53, 56, was heard. I think the opinion of the court in that case is expressive of the whole tenor of the series of litigation involving the rights of these Negro employees. Judge Simons in the opinion said: "If the allegations of the complaint are true, the appellant has a grievance, and one that is substantial and not merely colorable or fanciful. Somewhere must reside judicial power to adjudicate it, and grant him and others of his class adequate relief."

Since this court has assumed jurisdiction the matter should be finally adjudicated without change in the agreement pending the final judgment in the case. The motion for an injunction pendente lite is sustained and orders to that effect will be entered.

The plaintiff will prepare and submit without delay orders in conformity with this opinion.