## UNITED STATES v. THOMAS STEEL CORPORATION et al.

### Civ. No. 24760.

United States District Court
N. D. Ohio, E. D.
Aug. 20, 1952.

John J. Kane, Jr., U. S. Atty., Cleveland, Ohio, and T. Hayward Brown, Sp. Asst., Washington, D. C., and Clyde A. Norton of the Department of Justice, New York City, for plaintiff.

Earl W. LeFever, Cleveland, Ohio, for Thomas Steel Corp.

Hoyt A. Moore, New York City, Cravath, Swaine & Moore, New York City, John B. Putnam, Andrews, Hadden & Putnam, Cleveland, Ohio, for Youngstown Sheet & Tube Co.

Howard F. Burns, Cleveland, Ohio, Franklin B. Powers, Youngstown, Ohio,

William H. Webb, Pittsburgh, Pa., for Cold Metal Products Co.

Andrew P. Martin, Squire, Sanders & Dempsey, O. P. Moon, Cleveland, Ohio, D. G. Dalton, Pittsburgh, Pa., for American Steel & Wire Co.

T. F. Patton, H. C. Lumb, Cleveland, Ohio, for Republic Steel Corporation.

Squire, Sanders & Dempsey, Cleveland, Ohio, Scott, MacLeish & Falk, Chicago, Ill., Hinkle, Horton, Ahlberg, Hansmann & Wupper, Chicago, Ill., for Signode Steel Strapping Co.

T. F. Veach and G. W. Humphrey, Jones, Day, Cockley & Reavis, Cleveland, Ohio, Earl F. Reed, Thorp, Bostwick, Reed & Armstrong, Pittsburgh, Pa., for National Steel Corporation.

William B. Cockley, Jones, Day, Cockley & Reavis, Cleveland, Ohio, H. Eastman Hackney, Joseph I. Marshall, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Crucible Steel Co. of America.

Hyde, Meyer, Baldwin & Doran, Cleveland, Ohio, A. C. Neave, New York City, for John A. Roebling's Sons Co.

Paul J. Christiansen, West Orange, N. J., for Thomas A. Edison, Inc.

Andrew P. Martin and Frank Harrison, Cleveland, Ohio, Wm. J. Kyle, Jr., Pittsburgh, Pa., for Allegheny Ludlum Steel Corporation.

Andrew P. Martin, Squire, Sanders & Dempsey, Cleveland, Ohio, D. G. Dalton, Pittsburgh, Pa., B. L. Rawlins, Pittsburgh, Pa., for Carnegie-Illinois Steel Corporation.

Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., Joseph E. Dickinson, Paul N. Critchlow, James S. Crawford, Jo. Baily Brown, Oberlin & Limbach and Jno. F. Oberlin, Cleveland, Ohio, for United Engineering & Foundry Co.

Earl W. LeFever, Cleveland, Ohio, R. C. Gormley, Chadbourne, Wallace, Parke & Whiteside, New York City, for American Brass Co.

Francis T. Reeves, Waterbury, Conn., Mark L. Sperry, 2nd, Waterbury, Conn., Andrew P. Martin and Frank Harrison, Cleveland, Ohio, for Scovill Manufacturing Co.

Wm. B. Cockley, Cleveland, Ohio, Paul, Lawrence & Wills, Pittsburgh, Pa., for Follansbee Steel Corporation.

Wm. B. Cockley, Cleveland, Ohio, Harry W. Lindsey, Jr., Chicago, Ill., for Inland Steel Co.

Earl W. LeFever, Cleveland, Ohio, Sullivan & Cromwell, New York City, for International Nickel Co.

Wm. B. Cudlip and T. Donald Wade, Detroit, Mich., for McLouth Steel Corporation.

Claude E. Clarke, Cleveland, Ohio, Wm. J. Caldwell, New Castle, Pa., for Elliott Brothers Steel Co.

Andrew P. Martin and Frank Harrison, Cleveland, Ohio, Wm. J. Kyle, Jr., Pittsburgh, Pa., for Wallingford Steel Co.

Root, Ballantine, Harlan, Bushby & Palmer, New York City, Andrew P. Martin and Frank Harrison, Cleveland, Ohio, for Associated Spring Corporation.

Breed, Abbott & Morgan, New York City, Andrew P. Martin and Frank Harrison, Cleveland, Ohio, for American Rolling Mill Co.

William H. Webb, Pittsburgh, Pa., Franklin B. Powers, Youngstown, Ohio, Howard F. Burns, Cleveland, Ohio, for Cold Metal Process Co. and Union National Bank of Youngstown, Ohio, as Trustee of the Leon A. Beeghly Fund.

MILLER, Circuit Judge. (Sitting by designation.)

This action was filed by the United States on March 3, 1947, pursuant to the provisions of the Royalty Adjustment Act, 35 U.S.C.A. §§ 89 through 96, against the Thomas Steel Corporation and numerous other defendants who were operating as licensees under certain patents pertaining to the cold rolling of steel, for the purpose of compelling such licensees to pay into the Registry of the Court royalties payable under the license agreements, and to determine the respective interests in said monies as between the United States and the owners and licensors of said patents.

Over a period of a number of years, beginning about 1928, the Defendant, the Cold Metal Process Company, owner of the patents herein involved, executed license agreements to numerous companies engaged in the manufacture of steel, who over a period of years paid to the licensor the royalties provided by said agreements. During recent years, the Cold Metal Process Company transferred the patents to the Defendant, The Union National Bank of Youngstown, Ohio, as Trustee of the Leon A. Beeghly Fund. These two defendants are hereinafter referred to as Cold Metal or the Licensor.

The complaint alleges that the defendant licensees made regular payment of the royalties called for under their respective license agreements until some time prior to August 18, 1943; that at that time pursuant to the authority conferred by the Royalty Adjustment Act of October 31, 1942, proceedings were taken by certain departments and agencies of the Government to fix the royalties payable under the license agreements at rates or amounts determined to be fair and just, taking into account the conditions of war-time production; that on December 29, 1944, the Cold Metal Process Company Joint Board, operating under the Act, entered an order which provided that the fair and just rate of royalties to be paid by the licensees should be zero and that the licensees should pay over to the Secretary of the Treasury for deposit in the treasury of the United States the balance of all royalties to which said order applied in excess of said amount; that although royalties of the character above referred to had accrued under the license agreements, the defendant licensees had not paid such royalties to the Secretary of the Treasury as directed by the order, but had withheld and retained such excess royalties; that the Cold Metal Process Company and the Trustee claimed some interest, the exact amount of which was unknown, in the monies affected by the provisions of the royalty adjustment order and were necessary and indispensable parties to the action. The complaint prayed that the licensees be required to deposit into the Registry of the Court all monies due or owing to the United States or to Cold Metal; that the Court determine the respective interest in said monies as between the United States and Cold Metal; and that the defendants be required to file at the time when said monies were being paid into court a report stating the basis of the computation of said monies as determined by each of them.

On May 16, 1947, Cold Metal filed an answer, which in addition to denials of certain allegations of the complaint, pleaded the following affirmative defenses:

By Paragraph XI it pleaded that the Royalty Adjustment Act was unconstitutional and void, and that the order issued thereunder was void and of no effect.

By Paragraph XII it pleaded that the order issued against it and its licensees was inapplicable to any of the royalty payments due and owing to Cold Metal "for the reason that no such royalties or sums were charged or were or are chargeable directly or indirectly to the United States for any supplies, equipment, or materials delivered to or for the Government."

By Paragraph XIII it pleaded that the order issued against it and its licensees was inapplicable to any of the royalties due and owing to Cold Metal "for the reasons that (a) the licensed inventions were not 'manufactured, used, sold, or otherwise disposed of for the United States,' (b) no department or agency of the Government ordered 'manufacture, use, sale, or other disposition' of the licensed inventions for the United States, (c) any 'manufacture, use, sale, or other disposition of' the licensed inventions by said licensees was not 'with the authorization or consent of the Government' or any head of any department or agency thereof, and (d) said notices and order did not otherwise comply with the provisions of said Royalty Adjustment Act as to the issuance of such notices or orders."

By Paragraph XIV it pleaded that the action was not maintainable by the United States under the Royalty Adjustment Act, since the Act was devoid of any provisions permitting such an action by the United States.

By Paragraph XV it pleaded that the order and the proceedings leading to the issuance thereof were arbitrary and in excess of any powers possessed by the agency authorized by the Act to fix the royalties to be paid.

By Paragraph XVI it pleaded that the order purportedly issued under the Act was void as being arbitrarily issued without any factual support and without any reasonable belief or knowledge that the royalties payable under the license agreements were unreasonable, or whether any of said royalties were subject to the provisions of the Act.

Cold Metal also included cross-claims (Paragraph XVII) against the licensees which alleged that the licensees owed the licensor substantial sums of money pursuant to the terms of the license agreements, the amounts of which were unknown to the licensor. It also filed a counter-claim (Paragraph XVIII) against the United States which alleged that the order purporting to fix the royalties under the license agreements at zero was void and not applicable to any of the royalties due under the license agreements; that the Royalty Adjustment Act was unconstitutional as attempting to authorize the taking of private property without just compensation; and that the royalties specified in the license agreements were reasonable and not excessive, by reason of which it was entitled to recover from the United States the entire difference between the royalties fixed in the order and the royalties specified in the respective license agreements.

On July 18, 1947, the United States moved to strike sections XI, XIII(b), XIII(d), XIV, XV, XVI and XVIII. On April 15, 1948, this motion was sustained by the District Court without opinion.

Substantial sums have been paid into the Registry of the Court by the licensee defendants. It was recognized by both the United States and Cold Metal that the Royalty Adjustment Act and the order of December 29, 1944, on which this action is founded, were applicable only to royalties arising out of the manufacture, use, sale or other disposition of licensed inventions for the United States, generally referred to as Government end use, and that the Act was not applicable to royalties arising out of the use of the licensed inventions in the manufacture of metals for or sold to others, generally referred to as civilian end use; that the licensee defendants in making payments into the Registry of the Court did not distinguish between royalties accruing from Government end use and royalties accruing from civilian end use; and that substantial difficulties would be met and a tremendous amount of labor and expense would be involved in the determination of the royalties which accrued in each of the respective uses. Accordingly, on August 23, 1949, an agreed order was entered by which it was agreed that up to and including August 31, 1945 eighty-five percent of the royalties should be considered to have arisen out of the use of the licensed inventions for the United States and the remaining fifteen percent of the royalties should be considered to be wholly outside the operation of the Act; that subsequent to August 31, 1945 ten percent of the royalties should be considered to have arisen out of the use of the licensed inventions for the United States and the remaining ninety percent of the royalties should be considered to be wholly outside of the operation of the Act; that the Clerk should pay to Cold Metal out of the royalties then on deposit in the Registry of the Court the sum of $3,424,278.58 and to hold the balance of the royalties then in the Registry of the Court subject to the further order of the Court. Subsequent payments into the Registry of the Court were to be disbursed to Cold Metal or held on deposit in accordance with the same formula. The order also provided that upon the payment of such royalties to Cold Metal the defendant licensee who paid such royalties into the Registry of the Court was fully discharged and released from any further liability to the United States and to Cold Metal in respect of the money so paid to Cold Metal, but that payment of such money would not discharge the licensee from any obligation it might have, and which this Court might subsequently determine, in respect of additional royalties which might be due under its license agreement.

Following a pre-trial discussion of the issues involved, the United States on January 15, 1952, filed the pending motion to strike Paragraphs XII, XIII(a) and XIII (c) of the answer of Cold Metal. On January 14, 1952, Cold Metal filed the pending motion that the Court reconsider its ruling of April 15, 1948 striking from the answer of Cold Metal Paragraphs XI, XIII(b) and XVI. There are also numerous pending motions filed by the licensee defendants involving the same questions, to which it is unnecessary to refer in detail, as they will stand or fall in accordance with the rulings on the pending motions of the United States and Cold Metal.

On February 25, 1952, the United States filed the pending motion to amend its complaint by striking out in their entirety Paragraphs III and IV, which paragraphs contained the allegations that the Cold Metal Process Company and the Trustee claimed some interest in the monies affected by the provisions of the Act and were necessary and indispensable parties to the suit. This motion also requested leave to dismiss the complaint as to both the Cold Metal Process Company and the Trustee, and asked that the Court order the Clerk to pay to the Treasurer of the United States all money remaining on deposit in the Registry of the Court in this action. This motion is objected to by Cold Metal and the licensee defendants, and will be disposed of first.

■ It is clear that the United States can not dismiss this action against Cold Metal if Cold Metal is an indispensable party. Schuckman v. Rubenstein, 6 Cir., 164 F.2d 952, 956; Kentucky Natural Gas Corp. v. Duggins, 6 Cir., 165 F.2d 1011, 1015. Since the complaint alleges in Paragraphs III and IV that Cold Metal is a necessary and indispensable party to the action, it would be necessary to withdraw or eliminate such allegation before the action could be dismissed. This is the basis for the Government's motion to amend the complaint. The Government contends that following the agreement of August 23, 1949 the interest which Cold Metal has in the monies paid into the Registry of the Court has been settled, and that it is no longer either an indispensable or a necessary party.

■ It is true that the agreement provides a formula for determining the portion of the royalties paid into Court which is subject to the provisions of the Act, and how much of such money is free from the provisions of the Act and payable to Cold Metal. But the agreement is not a complete settlement of this issue. There is still open for possible dispute whether certain royalties accrued prior to August 31, 1945 or subsequent thereto. The order also covers additional royalties hereafter paid into the Registry of the Court about which the same question may arise. Cold Metal has a substantial interest in such an issue, and should be permitted to have its day in court if and when such an issue develops. The licensees, in making payments into Court have done so under their own computation of what these payments should be. Future payments will be similarly computed. Certainly Cold Metal is not bound by such a computation, if in its opinion the amount paid in is less than it should be. The agreement expressly provides for such a contingency. The United States contends that this question could be litigated between Cold Metal and the licensees under the cross-claims filed by Cold Metal. This means, in effect that Cold Metal would be out of the suit as a defendant, but remain in the suit as a cross-claimant, which would be a very anomalous situation. I do not think that Rule 13(g), Rules of Civil Procedure, authorizing a cross-claim in a defensive pleading, includes such a pleading by one who is not a party to the action. Such a claim is a separate cause of action and the subject of an independent suit. In my opinion, Cold Metal must remain in the action as a defendant if the Court is to retain jurisdiction in this action over its cross-claims against its licensees.

In addition, such a settlement not participated in by the Government might leave the way open for the Government to relitigate that issue with the licensees in another action. Certainly, the better and desirable practice in a three-cornered litigation such as involved here is to have all the parties

before the Court, with the opportunity to have their day in Court, and thus be bound by the ruling on issues in which all are concerned. Texas v. Florida, 306 U.S. 398, 405–412, 59 S.Ct. 563, 830, 83 L.Ed. 817; United States v. Moscow-Idaho Seed Co., 9 Cir., 92 F.2d 170, 173. Even if Cold Metal is not an indispensable party, and was not made a party defendant to this action, the Court would have the authority to make it a party hereto in order to provide complete relief to all who are interested in the subject matter of this litigation. Rule 19(b), Rules of Civil Procedure.

It also appears that a similar action to this was filed in the District Court for the District of Delaware on December 10, 1946, and it then developing that jurisdiction could not there be obtained over *both* Cold Metal and the licensees, the action was not pressed, and instead this action was filed in this District, with at least an informal understanding between the Plaintiff and some of the parties that jurisdiction having been so obtained over Cold Metal, licensees outside the jurisdiction of the Court would voluntarily enter their appearance to the action so as to enable the whole controversy between the United States, Cold Metal and the licensees to be settled in this one action. Voluntary appearances have been entered. The motion to dismiss Cold Metal at the present time is vigorously opposed by the licensees as not being in accord with that understanding.

■ The United States contends that the issues which Cold Metal may wish to litigate with it in this action, can not be litigated here but are issues over which the Court of Claims has exclusive jurisdiction. Section 2 of the Royalty Adjustment Act provides for action by the licensor against the United States in the Court of Claims in the event the licensor is aggrieved by any order fixing the maximum royalties under a license agreement in which action the licensor may recover from the United States any additional amount necessary to constitute fair and just compensation to the licensor. Section 1 of the Act makes this the sole and exclusive remedy of the licensor, except as to the recovery of royalties fixed in the order. I am of the opinion that these provisions apply to litigation concerning the *amount* of the royalties to which the licensor claims to be entitled, and that they have no application to the question of whether the royalties paid into Court come under the provisions of the Act (Government end use) or fall outside the provisions of the Act (Civilian end use). The applicability of the Act to certain royalties is a question which can be determined by any Court having jurisdiction of the subject matter and the parties. Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 67 S.Ct. 231, 91 L.Ed. 128; United States v. Youngstown Sheet & Tube Co., 6 Cir., 171 F.2d 103. The ruling of this Court on such an issue would in my opinion be res judicata in the matter, and the issue could not be relitigated by Cold Metal or the United States in the Court of Claims. In such an action Cold Metal would litigate the amount of the royalty to which it was entitled on what is here held to be Government end use production.

The motion of the United States to amend the complaint and to dismiss the action as to Cold Metal Process Company and the Trustee is overruled.

■ The pending motion of the United States to strike from the answer of Cold Metal Paragraphs XII, XIII(a) and XIII (c), and the pending motion of Cold Metal to reconsider the ruling of April 15, 1948 insofar as it struck from the answer Paragraphs XI, XIII(b) and XVI brings up for consideration, either for the first time or by way of reconsideration Paragraphs XI, XII, XIII(a), XIII(b), XIII(c) and XVI. The previous striking of Paragraphs XIII (d), XIV, XV, and XVIII is accordingly not involved. The United States objects to a reconsideration by a Judge of a District Court of rulings made by another Judge of the same Court approximately four years prior thereto, contending that one Judge of a District Court should not review the rulings of another Judge of the same Court, particularly after the rulings have been acquiesced in for a long period of time. This is the generally accepted rule and should be followed except for the most cogent reasons. Commercial Union of America v. Anglo-South American Bank, 2 Cir., 10 F.

2d 937; Price v. Greenway, 3 Cir., 167 F. 2d 196, 199, 200; Hardy v. North Butte Mining Co., 9 Cir., 22 F.2d 62; Plattner Implement Co. v. International Harvester Co., 8 Cir., 133 F. 376; Kellogg Switchboard & Supply Co. v. Michigan Bell Telephone Co., D.C., E.D.Mich., 71 F.Supp. 365; Salvant v. Louisville & N. R. Co., D.C., W. D.Ky., 83 F.Supp. 391. The rule will accordingly be followed in this case, regardless of how I would rule if it was being presented to me as an original matter, with respect to Paragraph XVI. However, counsel for Cold Metal has brought to the attention of the Court a quoted statement of the District Judge who made the former ruling, that in view of the arguments presented in a pre-trial conference on October 20, 1949 he was giving reconsideration to the rulings which struck Paragraphs XI and XIII(b) from the answer, and that in answer to an inquiry by the District Judge to Government counsel if such procedure was satisfactory, Government counsel stated that it was. Accordingly, reconsideration will at this time be given to the rulings affecting Paragraphs XI and XIII(b). Salvant v. Louisville & N. R. Co., supra, 83 F. Supp. 391, 395; Bowles v. Wilke, 7 Cir., 175 F.2d 35, 37; Brainard v. Atchison, Topeka & Santa Fe Ry. Co., D.C.Kan., 87 F.Supp. 921, 923.

█ Paragraph XI. This paragraph of the answer attacks the constitutionality of the Act and the validity of the order issued under it. I recognize the general rule that a ruling involving a constitutional question is to be avoided if the case can be disposed of on another ground. Spector Motor Co. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101; Alma Motor Co. v. Timken-Detroit Axle Co., supra. But if it cannot be disposed of on a nonconstitutional ground, the issue of constitutionality must be met. So in this case, the Court will first determine whether any of the royalties paid into Court are subject to the provisions of the Act. If they are not, the case is disposed of without considering the constitutionality of the Act, and Paragraph XI of the answer becomes immaterial and unnecessary. Under such conditions it could be properly stricken. But if the Court finds that some of the royalties paid into Court are subject to the provisions of the Act, then the constitutionality of the Act is a material issue, and is properly presented by Paragraph XI. Alma Motor Co. v. Timken-Detroit Axle Co., supra, 329 U.S. 129 at page 138, 67 S.Ct. 231. Since the alleged cause of action is based on the provisions of the Act and the order issued under it, the action necessarily falls if either the Act is unconstitutional or the order void. The Employers' Liability Cases, Howard v. Ill. Central Railroad Co., 207 U.S. 463, 490, 28 S.Ct. 141, 52 L.Ed. 297; Annotation, 36 A.L.R. 492. I am of the view that Paragraph XI of the answer should not have been stricken and should be reinstated. This is not a ruling on the constitutionality of the Act, but merely retains the issue as part of the defense in case it becomes necessary later to decide it.

Paragraph XII. Section 7 of the Act states: "This Act shall apply to all royalties directly or indirectly charged or chargeable to the United States for any supplies, equipment, or materials to be delivered to or for the Government". This paragraph of the answer states that the royalties herein involved are not of that character. If they are not of that character, the alleged defense is a valid one. The motion to strike Paragraph XII is overruled.

Paragraph XIII(a). Section 1 of the Act provides: "whenever an invention * * * shall be manufactured, used, sold, or otherwise disposed of for the United States, with license from the owner thereof" *and* the royalties in the license agreement are believed to be unreasonable, the head of the agency of the Government concerned can take steps to fix the royalties at such amount as shall be determined to be fair and just, taking into account the conditions of war time production. This paragraph of the answer states that the royalties herein involved were not manufactured, used, sold, or otherwise disposed of for the United States. If these allegations are proved, then there was no authority to the Government agencies to have the royalties fixed at zero or at any sum other than that provided by the license agreement. The so-called Government end use is a necessary

fact to bring the royalties under the Act. The motion to strike Paragraph XIII.(a) is overruled.

Paragraph XIII(b). Section 1 of the Act provides that action to have the specified royalties redetermined can be taken by the head of the agency of the Government "which has ordered such manufacture, use, sale, or other disposition". This paragraph of the answer states that no agency of the Government "ordered" the manufacture, use, sale, or other disposition of the licensed inventions for the United States. The procedure taken in this case to redetermine the amount of the royalties was unauthorized and the reduction invalid if the use of the inventions were not ordered by the agency of the Government taking the action. This part of the answer presents a valid defense if established by the evidence and should remain in the case as a defensive pleading.

Paragraph XIII(c). Section 6 of the Act provides that the manufacture or use of the invention by any person or corporation for the Government "with the authorization or consent of the Government" shall be construed as the manufacture or use for the United States for the purposes of the Act. This paragraph of the answer states the manufacture or use of the invention was *not* with the authorization or consent of the Government. In order for the Government to avail itself of this provision, somewhat akin to a presumption of law, which in all probability it will seek to do, it will be necessary to prove the underlying fact upon which the presumption is based. Proof of such fact would no doubt be required by the Court in order to take advantage of the provision, even without a pleading putting the fact in issue. Shepherd v. Midland Mutual Life Ins. Co., 152 Ohio St. 6, 14–15, 87 N.E. 2d 156, 112 A.L.R.2d 1250; Schindley v. Allen-Sherman-Hoff Co., 6 Cir., 157 F.2d 102, 104; Kenney v. Washington Properties, 76 U.S.App.D.C. 43, 128 F.2d 612, 615. The motion to strike this portion of the answer is overruled.

The chief objection of the United States to the foregoing rulings with respect to Paragraphs XII and XIII(a) (b) and (c) seems to be that the allegations do not correctly state the facts. That may or may not be so. It must be kept in mind that the ruling in each instance is not a ruling that such are the facts; it merely retains the defensive pleading as a part of the record in order to give Cold Metal an opportunity to prove such facts, if it can. A defendant, as well as a plaintiff, is entitled to his day in court.

Counsel for Cold Metal will prepare, and submit to counsel for interested parties and to the Court for approval and entry an appropriate order disposing of all pending motions in accordance with the views hereinabove expressed.