**UNITED STATES of America,
Plaintiff,**

v.

**THOMAS STEEL CORPORATION et al.,
Defendants.**

**Civ. A. No. 24760.**

United States District Court
N. D. Ohio, E. D.
April 15, 1958.

T. Hayward Brown, Chief of Patent Section, Dept. of Justice, Washington, D. C., Sumner Canary, U. S. Atty., Cleveland, Ohio, for plaintiff.

William H. Webb, Pittsburgh, Pa., Howard F. Burns, Cleveland, Ohio, for Cold Metal Process Co.

George H. Rudolph of Jones, Day, Cockley & Reavis, Cleveland, Ohio, for Thomas Steel Corp. (now Pittsburgh Steel Co.)

Frank Harrison of Squire, Sanders & Dempsey, Cleveland, Ohio, for U. S. Steel Corp., American Steel & Wire Co., and Carnegie-Illinois Steel Co.

George H. Rudolph, Cleveland, Ohio, for American Brass Co., Crucible Steel Co. of America, Inland Steel Co., and Internat'l Nickel Co.

Claude E. Clarke, Cleveland, Ohio, for Elliott Bros. Steel Co.

Frank Harrison, Cleveland, Ohio, for Associated Spring Corp.

Paul J. Christiansen, West Orange, N. J., for McGraw-Edison Co. (formerly Thomas A. Edison, Inc.)

WEICK, District Judge.

The complaint was filed by the United States to collect monies due it under the provisions of the Royalty Adjustment Act of 1942, 56 Stat. 1013 and the Royalty Adjustment Order issued thereunder. Repealed Title 35 U.S.C. §§ 89–96.

The defendants, The Cold Metal Process Company and The Union National Bank of Youngstown, Ohio, both Ohio corporations, (hereinafter referred to as "Cold Metal" or as licensor) were the owners of certain inventions and patents relating to methods and apparatus for hot and cold rolling of metals, which they had licensed at different times to the other defendants (hereinafter referred to as licensees) by separate license agreements.

The prayer of the complaint was for an order requiring the defendants to pay into the Registry of the Court "all monies now due or owing to the plaintiff or to defendants, The Cold Metal Process Company * * * and affected in any re-

spect by the provisions of said Royalty Adjustment Order"; for the Court to "hear and determine the respective interests in said monies as between the United States and defendants, The Cold Metal Process Company, * * *, and any other claimant thereto as may appear, and enter a final order for the distribution of said money as the Court shall deem meet and proper" and for other equitable relief.

All of the defendants were either served with summons on the complaint or filed answers thereto and thereby waived summons.

Cold Metal filed an "answer, cross claims and counterclaim." In the portion thereof denominated as "cross claims" all of the licensees were joined in a single cross-claim which stated simply that Cold Metal had entered into license agreements with said licensees whereby said licensees had agreed to pay royalties and other sums to Cold Metal; that said licensees now owe substantial sums of money to Cold Metal pursuant to the terms of said agreements. Cold Metal prayed that an accounting be ordered against the licensees to determine the royalties or other sums due Cold Metal pursuant to the terms of said license agreements, and to determine whether any and, if so, what royalties are affected by or are subject to the Royalty Adjustment Act and the Order issued pursuant thereto and that judgment be rendered against the licensees for all royalties due under said license agreements together with interest and for other equitable relief.

During the pendency of the complaint, the licensees from time to time, under order of the Court, paid monies into the Registry of the Court, portions of which were distributed to Cold Metal with the consent of the Government.

These monies represented royalties which the licensees admitted owing to Cold Metal under the license agreements. There was no separation of the part of the royalties which were subject to ad-

justment under the Act as the licensees claimed it was not feasible for them to make such determination.

See the decision of Circuit Judge Miller in United States v. Thomas Steel Corp., D. C., 107 F.Supp. 418 for a discussion of the history of this litigation.

On December 28, 1955, the United States and Cold Metal settled their differences and the Court, after notice to all parties, dismissed the complaint with prejudice, but without prejudice to the cross-claims of Cold Metal against the licensees, or their defenses thereto, which were to remain for adjudication by the Court. The balance of the funds in the Registry of the Court was ordered paid to Cold Metal.

Subsequent thereto, Cold Metal settled with some of licensees who have been dismissed from the case.

There still remained for adjudication by the Court the cross-claims of Cold Metal against Thomas Steel Corporation (now Pittsburgh Steel Company), United States Steel Corporation (American Steel & Wire and Carnegie-Illinois), Crucible, National-Standard, Edison, American Brass, Inland, Elliott Bros., Associated Spring and International Nickel. It is the claim of Cold Metal that these licensees did not pay into the Registry of the Court all of the sums of money which they were obligated to pay under the license agreements.

All of these remaining licensees had filed answers to the cross-claims except National-Standard, Edison and Elliott Brothers.

All of said licensees except National-Standard filed motions under Rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A. to dismiss the cross-claims of Cold Metal against them on the ground that said cross-claims did not arise out of the transaction or occurrence that was the subject matter of the original action or any property that was the subject matter thereof.

The licensees claim that since the cross-claims were not properly filed under

Rule 13(g) that the Court has no jurisdiction to adjudicate them.

It was argued by the licensees that the claim of the Government was based on the Royalty Adjustment Act of 1942 and the Royalty Adjustment Order issued thereunder whereas Cold Metal's cross-claims were contractual in nature since they were based on the license agreements.

■ The Royalty Adjustment Act was a war-time measure enacted to prevent the charging of excessive and unreasonable royalties *on licensed inventions* manufactured, used, sold or otherwise disposed of for the United States. United States v. Youngstown Sheet & Tube Co., 6 Cir., 171 F.2d 103.

The Government was claiming royalties, payable under the license agreements, which it asserted were subject to adjustment under the Act.

Cold Metal was claiming and was entitled to the royalties, under the same license agreements, which were not subject to adjustment under the Act as they did not involve sales to the Government.

■ Because of practical difficulties, it was deemed not feasible at that time to separate the royalties subject to adjustment to which the Government was entitled and those not subject thereto in which the Government had no interest as they belonged to Cold Metal. The licensees, therefore, paid into the Registry of the Court all of the royalties which they admitted were owing by them to either the Government or Cold Metal. The issue is whether they paid into the Registry all of the royalties required to be paid by them under the provisions of the license agreements.

The Court acquired complete jurisdiction upon the filing of the complaint and the cross-claims to determine the amount of royalties due under the license agreements; to order the payment of said royalties into the Registry of the Court; to determine the part of the royalties which were subject to adjustment under the Act and order the payment thereof to the United States; to determine the part of the royalties not subject to adjustment under the Act and order the payment thereof to Cold Metal.

Rule 13(g) ought not to receive such a narrow interpretation as would deprive the Court of jurisdiction to determine all of the issues in the case.

■ The agreements of the licensees to pay royalties to Cold Metal constituted single obligations and were not divisible. While the royalties were claimed both by the United States and Cold Metal on different grounds, this did not justify a splitting off of the claims so as to subject the licensees to separate law suits based on the same license agreements.

■ Cold Metal could have been joined with the Government under Rule 19 (a) either as a voluntary or involuntary plaintiff or as a defendant. It was invited to join as a party plaintiff, but declined to do so and was, therefore, joined as a party defendant. (Par. 3 of complaint.)

Circuit Judge Miller held that Cold Metal was an indispensable party and could not be dismissed from the case. United States v. Thomas Steel Corp., supra.

The transaction or occurrence which was the subject matter of the original action was the accrual of royalties under license agreements which the Government claimed were subject to adjustment under the Act.

The cross-claims of Cold Metal were for the recovery of royalties due under the same license agreements.

■ Rule 13(g) should be given a liberal construction to vest full and complete jurisdiction in the Court to determine the entire controversy and not merely a part of it particularly where, as here, the respective claims sought to be enforced are for the payment of royalties under the same license agreements. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750; 3 Moore's Federal Practice (2d Ed., 1948) § 13.13 pp. 32, 33; Craig v. Dorr,

**252**

4 Cir., 1906, 145 F. 307; Collier v. Harvey, 10 Cir., 1949, 179 F.2d 664.

It should also be noted that the requisite diversity of citizenship existed between Cold Metal and all of the remaining licensees except Thomas Steel Corporation. Its successor Pittsburgh Steel Corporation is a Pennsylvania corporation.

It was further claimed that the cross-claims do not state claims upon which relief may be granted.

■ The allegations in the cross-claims are somewhat meager, but they do give notice to the licensees that Cold Metal claimed substantial royalties under the license agreements and prayed for an accounting.

No motion for a more definite statement was made by any of the licensees. In any event, there is no good reason why Cold Metal should not be given an opportunity to state a claim upon which relief can be granted.

This case has been pending for more than ten years during which time the parties have participated in various proceedings before the Court. $8,509,694.56 has been paid into the Registry of the Court in this case and $1,353,298.85 in the companion Case No. 25709. $9,749,-000 was paid into the Registry of the Court in Case No. 21910. All of these funds have been distributed to Cold Metal.

It would seem that it took a long time for the licensees to ascertain that the cross-claims against them did not arise out of the same transaction or occurrence as the subject matter of the original action.

The several motions to dismiss are overruled.

Cold Metal is hereby ordered under Rule 21 to file a separate amended cross-claim against each licensee and to make therein a more definite statement of its claim.